[Cite as *State v. Gifford*, 2015-Ohio-5298.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | Appellate Case No. 26660 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 13-CR-3682 |
| v. | : | |
| | : | (Criminal Appeal from |
| MICHAEL GIFFORD | : | Common Pleas Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of December, 2015.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by CARLEY J. INGRAM, Atty. Reg. No. 0020084, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45402
     Attorney for Plaintiff-Appellee

J. DAVID TURNER, Atty. Reg. No. 0017456, Post Office Box 291771, Kettering, Ohio 45429-1771
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FAIN, J.

{¶ 1} Defendant-appellant Michael C. Gifford appeals from his conviction and

sentence, following a no-contest plea, on one count of Illegal Manufacture of Drugs, in

violation of R.C. 2925.04(A), a felony of the second degree, one count of Illegal Assembly/Possession of Chemicals for the Manufacture of Drugs, in violation of R.C. 2925.041(A), a felony of the third degree, and one count of Aggravated Possession of Drugs, in violation of R.C. 2925.11(A), a felony of the fifth degree. Gifford's assigned appellate counsel has filed a brief under the authority of *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), indicating that he has not found any potential assignments of error having arguable merit. Neither have we. Accordingly, the judgment of the trial court is Affirmed.

## I. Gifford's Purchase of Sudafed at a Walgreens Drugstore Leads to his Arrest for the Illegal Manufacture of Methamphetamine

{¶ 2} At about 5:00, one morning in mid-November, 2013, Kettering Police Officer Mark Stefano was dispatched to a Walgreens drugstore. The pharmacist there told Stefano that a man, later identified as Gifford, had purchased a package of Wal-Phed, Walgreens' brand-name equivalent of Sudafed, and an ice-pack. The pharmacist told Stefano that these were items used to make methamphetamine. She asked Stefano to "trespass" the man, if Stefano could find him; i.e., to tell him that he was no longer welcome at Walgreens,[1] and would be subject to prosecution for trespass if he entered the store.

{¶ 3} The pharmacist gave Stefano the license plate number of the car in which Gifford was a passenger. Stefano went to the address of the owner of the car, a woman,

---

[1] It is not clear from the record if the man – Gifford – was to be "trespassed" from all Walgreens stores, or merely from the store where he bought the Sudafed.

made contact with her, and established that the car had been made available to her mother-in-law to drive. Later in that conversation, Stefano discovered that the passenger in the car was likely Gifford, the mother-in-law's son, and that Gifford and his mother lived at 2904 Culver Avenue, in Dayton.

{¶ 4} Stefano asked for Dayton police to respond with him to the Culver Avenue address, and then proceeded to that address. Stefano testified that his purpose was: "Just to locate Mr. Gifford and also just to trespass him. That was my entire purpose of being at that address."

{¶ 5} Stefano got there about ten minutes before the Dayton police, parked "several houses down from the address," and waited in his cruiser for their arrival. Stefano could tell that the garage door was open at 2904 Culver, but could not see anything inside. When the Dayton police officers arrived, Stefano talked with them, and explained his purpose for making contact with Gifford.

{¶ 6} Stefano testified as to what happened next:

A. We just proceeded up the sidewalk, northbound up the sidewalk towards the residence, started up the driveway. At that point I observed the truck and matched the truck with the license plate number and knew that that was the vehicle that had been at Walgreens.

Q. Did it match the description that was provided to you by the Walgreens employee as well?

A. Correct.

Q. Okay.

A. Proceeded up the driveway. The driveway was longer in length.

The truck was parked closer to the garage. I could tell the garage was open, the door was open, but the truck obscured any view into the garage at that point. As we started up the driveway, Mr. Gifford started down the driveway towards on [sic] the driver's side of the truck, started walking. He's like, "What can I help you with?" And, you know, I think we just said, "How you doing?" He saw it was us. He then made a direct – he turned and started towards the back. It was like an enclosed patio entrance to the rear of the house.

I said, "Hey, hold on a second. We just want to talk to you." "Oh, just a minute." He said, "Just a minute. I just want to close this." He said, "I'm not going anywhere. I just want to close this." He opened the screen door and the garage door started to go down. And then he came over and made contact with us.

Q. And did you go and get him or did he come voluntarily back to speak with you?

A. He came back out toward us. And we stood – we were right there. It was like the enclosed patio on the left. The garage was on our right. And the truck was to our back side. And we stood there and talked.

Q. And at that point when you said, "Hey," when you caught his attention, was that for the purpose of providing him with the trespass?

A. Yes. I just wanted to talk to him about the trespass.

* * *

Q. Okay. And tell me about that conversation.

A. I told him why I was there, that he had been to Walgreens. At first he was confused. He had made mention of being at Wal-Mart and purchased some fuel. I said, "No, I'm talking about Walgreens just a little bit ago. You had been there and purchased some Wal-Phed and also the ice packs." And he said, "Oh, yeah, yeah. I was there." We continued on. I said, "Well," I said, "Those are common items to make methamphetamines." And I said, "We do track the sales at Walgreens and at this point the pharmacist just wants you trespassed from the property." And he said he was aware that those items are commonly used to make methamphetamines.

And then he actually said, "I'm actually making it. I'm going to be honest with you guys. I'm actually making it right now in the garage." At that point I think Dayton officer, one of the two asked him to open the garage. He said, "do you have a search warrant?" And we were all like, "Well, you just told us what's in there." And then he voluntarily freely opened it and we went from there.

Q. Okay. So when he opened the garage did you go inside of it?

A. I think eventually all three of us did walk in. I walked in. I observed a small pot on the tool bench and inside that pot was like a one liter or two liter bottle that was actively boiling, brewing.

{¶ 7} Gifford also testified at the suppression hearing. His testimony conflicted with that of the officers in a number of significant respects. The trial court found the

testimony of the two police officers at the suppression hearing to be credible.

{¶ 8} As a result of the discoveries in the garage, Gifford was arrested.

## II. The Course of Proceedings

{¶ 9} Gifford was charged by indictment with one count of Illegal Manufacture of Drugs, in violation of R.C. 2925.04(A), a felony of the second degree, one count of Illegal Assembly/Possession of Chemicals for the Manufacture of Drugs, in violation of R.C. 2925.041(A), a felony of the third degree, and one count of Aggravated Possession of Drugs, in violation of R.C. 2925.11(A), a felony of the fifth degree. Gifford moved to suppress the evidence found in the garage, contending that it was obtained as the result of an unlawful search and seizure. Following a hearing, Gifford's motion to suppress was overruled.

{¶ 10} Thereafter, Gifford pled no contest to all three charges, and convictions were entered. The parties agreed to a three-year mandatory prison sentence, which the trial court imposed for the Illegal Manufacture of Drugs offense. The trial court imposed one-year sentences for the other two offenses, to be served concurrently with the three-year sentence for Illegal Manufacture. Upon Griffin's motion, the trial court waived the mandatory fines for the offenses, finding Gifford to be indigent. The trial court imposed a six-month suspension of Gifford's driver's license, informed Gifford that he would be subject to post-release control for three years after his release from prison, and informed him of the consequences if he were to violate the conditions of post-release control.

{¶ 11} From his conviction and sentence, Gifford appeals. His appointed appellate counsel has filed an *Anders* brief, reflecting that he could find no potential

assignments of error having arguable merit. By entry dated September 2, 2015, we accorded Gifford the opportunity to file his own, pro se brief within 60 days. He has not done so.

### III. We Find No Potential Assignments of Error Having Arguable Merit

{¶ 12} In his brief, appellate counsel discusses one error that the trial court may have committed in its analysis of Gifford's motion to suppress. Counsel notes that the trial court found that Gifford had voluntarily consented to the search of his garage after stating that the State had the burden of proving voluntary consent "by a preponderance of the evidence." Counsel cites *State v. Black*, 2d Dist. Montgomery No. 23524, 2010-Ohio-2916, and *State v. Posey,* 40 Ohio St.3d 420, 427, 534 N.E.2d 61 (1988), for the proposition that the State must show by clear and positive evidence that consent was freely given, being a standard of proof not significantly different from a clear and convincing standard of proof.

{¶ 13} However, appellate counsel goes on to conclude that any error in this regard is harmless in view of the trial court's alternative basis for its conclusion:

> However, assuming arguendo that the [trial] court's ruling was erroneous as it pertained to the standard of evidence to be applied to determine voluntary consent, the court made an alternate ruling in support of its decision overruling defendant's motion to suppress. The [trial] court determined that "the police had grounds to search the garage based on Gifford's purchase of the meth lab ingredients and his [volunteered] statement that he was 'making it now.'" The [trial] court ruled that "[t]he risk of explosion as testified by the police officers constitutes exigent

circumstances as an exception to the search warrant requirement," citing *State v. * * * Timofeev*, [9th Dist. Summit No. 24222,] 2009-Ohio-3007 * * * and R.C. 2933.33 in support of this ruling.

{¶ 14} Counsel went on to agree with this part of the trial court's analysis. So do we. R.C. 2933.33(A) provides as follows:

If a law enforcement officer has probable cause to believe that particular premises are used for the illegal manufacture of methamphetamine, for the purpose of conducting a search of the premises without a warrant, the risk of explosion or fire from the illegal manufacture of methamphetamine causing injury to the public constitutes exigent circumstances and reasonable grounds to believe that there is an immediate need to protect the lives, or property, of the officer and other individuals in the vicinity of the illegal manufacture.

{¶ 15} To the trial court's analysis we would only add that at least one of the officers testified to the risk to the public posed by toxic gasses resulting from the illegal manufacture of methamphetamines. Not only was the warrantless search of the garage reasonable, it would have been irresponsible of the officers not to search the garage after Gifford's volunteered statement that he was making methamphetamine in the garage "right now."

{¶ 16} Pursuant to our duty under *Anders v. California, supra,* we have conducted an independent review of the record. We have found no potential assignments of error having arguable merit. The trial court conducted a proper plea colloquy. It imposed concurrent sentences within the ranges authorized by law, and the prison sentence it

imposed was the sentence that Gifford and the State agreed to.

### III.    Conclusion

**{¶ 17}** No potential assignments of error with arguable merit having been found,

the judgment of the trial court is Affirmed.

. . . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.

Copies mailed to:

Mathias H. Heck
Carley J. Ingram
J. David Turner
Michael Gifford
Hon. Richard Skelton